ORIGINAL

# In the United States Court of Federal Claims

No. 16-959L
(Filed: April 25, 2017)
NOT FOR PUBLICATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| CLARENCE WALKING EAGLE, JR., | *Cobell v. Salazar*; Statute of Limitations; Claim Preclusion. |
| *Plaintiff,* | |
| v. | |
| THE UNITED STATES, | |
| *Defendant,* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

FILED
APR 2 5 2017
U.S. COURT OF
FEDERAL CLAIMS

ORDER

Plaintiff, Clarence Walking Eagle, Jr., is a Sioux Native American in the Fort Peck Sioux Tribe and resides on Fort Peck in Brockton, Montana. Appearing *pro se,* he filed his complaint on August 8, 2016, seeking $10,000,000.00 in compensatory damages under various treaties and statutes due to, among other alleged wrongs, "being unlawfully alienated from the exclusive use and benefit of [his] trust land and exposed to foreign jurisdiction without consent for the benefit of non-Indian concerns for almost ninety-nine years."[1] Pl.'s Compl. ¶ 48. Plaintiff also seeks $10,000,000.00 in punitive damages and various forms of equitable relief, such as an order restraining state law enforcement agencies from exercising jurisdiction within the boundaries of Fort Peck.

On December 5, 2016, defendant filed a motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted, arguing that plaintiff's claims accrued outside this court's six-year statute of

---

[1] Along with his complaint, plaintiff filed a motion to proceed *in forma pauperis* on August 8, 2016.

1

limitations and that plaintiff is precluded from bringing these claims due to his participation in the *Cobell* class-action settlement, which is described in more detail below. *See Cobell v. Salazar*, No. 96-1285(TFH), 2011 WL 10676927 (D.D.C. July 27, 2011); Def.'s Mot. to Dismiss ("Def.'s Mot.") Ex. 4 (copy of the *Cobell* settlement agreement). We agree and deem oral argument on this motion unnecessary. Because we find that plaintiff's claims accrued outside of this court's six-year statute of limitations and that, in any event, plaintiff is precluded from bringing these claims due to the *Cobell* settlement agreement, we grant defendant's motion to dismiss.

*Pro se* plaintiffs are afforded latitude in their filings, *see, e.g, Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995), and are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). That said, the *pro se* plaintiff is not relieved of his duty to meet the court's jurisdictional requirements. *See Henke*, 60 F.3d at 799. Before the court considers the merits of a complaint, it must determine the threshold matter of subject-mater jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998). Because we are deciding a motion to dismiss, we construe the allegations in the complaint in the light most favorable to plaintiff and assume all unchallenged factual allegations to be true. *See Henke*, 60 F.3d at 797. However, the court is not confined to an examination of the complaint when considering a motion to dismiss, but may also look to "evidentiary matters outside the pleadings." *Schuerman v. United States*, 30 Fed. Cl. 420, 425 (1994) (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993)).

The Tucker Act, this court's primary grant of jurisdiction, affords us the authority to "render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Thus we do not have general equitable jurisdiction to provide the various non-monetary relief that plaintiff seeks. Outside the context of a bid protest, equitable relief may only be provided as an incident of and collateral to a money judgment. *See James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998). As we discuss in more detail below, plaintiff's complaint does not include allegations that lead to such a circumstance. Accordingly, we do not have jurisdiction over plaintiff's non-monetary claims.

Plaintiff also frequently refers to a conspiracy and uses other language that intimates some form of criminal conduct on the part of the government and its agents. However, we do not have jurisdiction to adjudicate criminal claims. *See Hufford v. United States*, 87 Fed. Cl. 696, 702 (2009). Therefore, to the extent that plaintiff is alleging any criminal conduct by government employees, we do not have jurisdiction to entertain such allegations. Similarly, plaintiff's conspiracy claims would fail if they were characterized as a tort because this court does not have jurisdiction over cases sounding in tort. 28 U.S.C. § 1491 (excluding cases "sounding in tort"); *Gable v. United States*, 106 Fed. Cl. 294, 297 (2012) ("The United States Court of Federal Claims does not have jurisdiction to adjudicate tort claims."). We are also without power to award punitive damages. *See Environmental Safety Consultants, Inc. v. United States*, 95 Fed. Cl. 77, 98 (2010).

We are left with plaintiff's primary claim for compensation, which centers on plaintiff's belief that the United States improperly allowed Roosevelt County, Montana to build County Road 1041 ("CR 1041") on a 40-acre individual land allotment held in trust by the United States for plaintiff (the "Trust Land"). Compl. ¶ 17. However plaintiff may attempt to frame a claim arising out of the construction of CR 1041, it is time-barred.

All claims brought under the Tucker Act are subject to a six-year statute of limitations. 28 U.S.C. § 2501 (2012). In order for this court to entertain plaintiff's suit, he must have filed within six years after his claim accrued. As a general matter, a claim accrues "when all the events have occurred that fix the alleged liability of the government and entitle the claimant to institute an action." *Ingrum v. United States*, 560 F.3d 1311, 1314 (Fed. Cir. 2009) (citing *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d 1478, 1481 (Fed. Cir. 1994)). As defendant points out, "an action for breach of fiduciary duty accrues when the trust beneficiary knew or should have known of the breach." *Jones v. United States*, 801 F.2d 1334, 1335 (Fed. Cir. 1986). Defendant attached a satellite image of CR 1041 dated June 11, 1996—more than 20 years before plaintiff filed suit—as exhibit 3 to its motion to dismiss. In his response, plaintiff described the 20-year-old image as "prima [facie] evidence of the gran[t]s of right[s] of way[], easements, and the physical County Road 1041 that was illegally placed in the middle of [the Trust Land] without consent or just compensation." Pl.'s Resp. at 27. A deeper examination of the factual background is not necessary because we are satisfied that plaintiff knew or should have known about the existence of CR 1041 no later than June 11, 1996. As a result, plaintiff's claims accrued outside this court's

six-year statute of limitations.

In any event, plaintiff is precluded from bringing these claims due to the preclusive effect of his status as a Trust Administration Class member in the *Cobell* settlement. To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a plaintiff must plead plausible facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barnes v. United States*, 122 Fed. Cl. 581, 583 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court will grant a motion to dismiss for failure to state a claim when it is clear that the plaintiff can prove no set of facts that would entitle him to relief. *Id.* Here, as defendant argues, we find that there is no scenario in which plaintiff could be entitled to relief due to the fact that he waived his claims as a member of the Trust Administration Class in the *Cobell* settlement.

The United States Court of Appeals for the District of Columbia Circuit briefly summarized the *Cobell* class-action litigation and settlement—in which plaintiff was a member of both the Historical Accounting Class and the Trust Administration Class—as follows:

> [F]ive named plaintiffs ("Class Representatives") initiated a class action lawsuit in 1996 seeking to compel the United States Department of the Interior to perform a historical accounting of the hundreds of millions of dollars held by the Department in trust for Native Americans. That accounting was required by the American Indian Trust Fund Management Reform Act of 1994, Pub. L. No. 103-412, 108 Stat. 4239. In 2001, [the United States Court of Appeals for the District of Columbia Circuit] affirmed the district court's conclusion that the Department had unreasonably and unlawfully delayed that statutorily mandated accounting. *Cobell v. Norton*, 240 F.3d 1081, 1105 (D.C. Cir. 2001). For the next decade, the parties, the district court, and Congress all struggled to determine how the Department could feasibly discharge its legal duty to conduct an accounting of the hundreds of thousands of "Individual Indian Money" trust accounts under its control. . . .
>
> We pick up the story in 2010 with the enactment of the Claims Resolution Act ("Claims Act"), Pub. L. No. 111-291, 124 Stat. 3064 (2010). The Claims Act authorized, ratified, and

4

> confirmed the parties' comprehensive Settlement Agreement resolving the class action litigation. *See id.* § 101(c)(1). . . .
>
> Under the Settlement Agreement, each member of what was known as the "Historical Accounting Class" received $1,000 in lieu of an actual accounting. . . . A separate class, known as the "Trust Administration Class," received a baseline payment of $500 and a prorated share of any funds left over in the settlement account after specified payments were made . . . . *Id.* at 914-915. In exchange, all class members released the Department of Interior from liability arising out of prior mismanagement of their trust accounts. *Id.*

*Cobell v. Jewell*, 802 F.3d 12, 16-17 (D.C. Cir. 2015).

As defendant points out, plaintiff was a member of the Trust Administration Class and had the ability to opt out but did not do so. Relevant here, plaintiff received an award as a member of the Trust Administration Class, totaling $1,753.81.[2] The *Cobell* settlement agreement provided that "all members of the Trust Administration Class . . . shall be deemed to have released, waived and forever discharged the [United States] from, and . . . shall be deemed to be forever barred and precluded from prosecuting, any and all claims and/or causes of action that were, or should have been, asserted in the Amended Complaint when it was filed, on behalf of the Trust Administration Class . . . with respect to . . . Land Administration Claims . . . ." Def.'s Mot. 18, Exh. 4 at 44. The *Cobell* settlement agreement defines "Land Administration Claims" to include "[f]ailure to obtain fair market value for leases, easements, rights-of-way or sales; . . . Misappropriation; . . . [and] Failure to control, investigate allegations of, or obtain relief in equity and at law for, trespass, theft, misappropriation, fraud or misconduct regarding Land." *Id.* at 11-12. Plaintiff received an award as a member of the Trust Administration Class in the *Cobell* settlement, and he knew or should have known of the claim he asserts in this action no later than June 11, 1996. He is therefore precluded from pursuing his claims here.

---

[2] Plaintiff's award was subject to a lien. He received a check for $405.90 and the State of Montana Department of Public Health and Human Services Child Support Enforcement Division received the remaining $1,347.91.

5

In sum, plaintiff's only claims over which we could conceivably have jurisdiction are outside this court's six-year statute of limitations period and precluded due to plaintiff's participation in the *Cobell* settlement. Thus plaintiff's complaint must be dismissed. As a result, the following is ordered:

1. Defendant's motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) is granted.

2. For good cause shown, plaintiff's motion to proceed *in forma pauperis* is granted.

3. The Clerk of Court is ordered to dismiss the complaint for lack of jurisdiction and enter judgment accordingly. No costs.

ERIC G. BRUGGINK
Senior Judge